## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANN L. SHAEFFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-1251-KGG |
| | ) | |
| ANDERSON MANAGEMENT | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM & ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this action alleging violations of Title VII, 42 U.S.C. § 2000(e)

for sexual harassment and retaliatory discharge.  She claims that the non-employee

husband of one of Defendant employer's managers sexually harassed her at the

workplace on numerous occasions and that when she reported the harassment she

was fired.  The Court finds that there are insufficient facts from which a jury could

find that Defendant's discharge was in retaliation for her report of sexual

harassment.  However, issues of fact remain sufficient to permit a finding by a jury

that the employer was negligent in failing to stop the harassment once it began.

Defendant's Motion for Summary Judgement (Doc. 18) is, therefore, **GRANTED**

**IN PART** and **DENIED IN PART**.

## Statement of Facts

In accordance with Federal Rule of Civil Procedure 56, the following facts are either uncontroverted or, if controverted, viewed in the light most favorable to Plaintiff.

Defendant Anderson Management Company, Inc. (AMC) is a real estate management company which manages seven "U-Stor" self-storage operations in Wichita.  Troy Hagerman is the property manager (hereinafter "property manager") and was Plaintiff's supervisor during her employment with Defendant.

Each location is managed by a local full-time manager who also lives on the property (herein referred to as the "site manager").  Plaintiff was a relief manager who was employed to relieve site managers when necessary.  Relief managers generally work at multiple locations during their employment.  Plaintiff began her employment for Defendant in 2010.  During her employment with AMC, Plaintiff worked at all 7 U-Stor locations at one time or another.

The site manager at the University U-Stor location lived at the facility with her children and her husband.  Plaintiff alleges that the site manager's husband (not an employee of Defendant) sexually harassed her at the University location on five separate occasions from January 22, 2012 to April 28, 2012.  On these occasions the site manager's husband exposed his genitals, touched Plaintiff's breasts,

attempted other sexual contact, and/or made inappropriate comments.  After incidents on February 12 and April 28, Plaintiff informed the site manager of what occurred; the site manager (who is married to the harasser) refused to believe Plaintiff.

Plaintiff's responsibilities as relief manager included renting units, dealing with customer contact, information and accounts, dealing with auctions, securing the properties, overseeing the properties when the full-time managers are gone, and completing day-to-day paperwork.  It is imperative that Defendant be able to trust its relief managers because, like site managers, they have access to sensitive confidential information about the business and its customers, as well as access to Defendant's properties and facilities.

When a customer who is renting a U-Stor storage unit is delinquent in rent payments, AMC can foreclose on the unit and sell its contents to recoup some or all of the back-due rent.  Company policy prohibits Defendant's employees, as well as their friends or family, from bidding on auctioned units or giving bidders any information about estimated unit values or prior bids to impact the bidding process. Plaintiff was aware of this policy.

Prior to her employment with Defendant, Plaintiff occasionally bid on foreclosed units that came up for auction.  The University location site manager

was familiar with Plaintiff because of this and recommended her for employment as a relief manager based on that relationship.

In May 2012, the site manager began to suspect Plaintiff was engaging in improper conduct related to auction bids.  The site manager thereafter informed Mr. Hagerman that the address Plaintiff listed as her own home address on her rental application for a storage unit was the same home address that a bidder used on an auction application.  That bidder had been successful in a December 2010 bid by bidding only $10 over a second highest secret bid.  This was unusual because it was the only bid the bidder placed on any unit and the bid was made only two days before bidding ceased.  The site manager also reported suspicious gate pass code activity which she associated with the bidder and Plaintiff in 2011. The site manager also recalled previously seeing Plaintiff transferring items to her own unit that the site manager suspected to be auction items from auctioned units purchased by the bidder.

On May 11, 2012, the site manager reported her suspicions to Mr. Hagerman.  Hagerman did additional investigation and confirmed that the bidder and Plaintiff had used the same address.  He deemed the incidents sufficiently suspicious to call a meeting with Plaintiff.  That meeting occurred on May 23, 2012.

At the meeting, Plaintiff denied that she had a "personal relationship" with the bidder.  Plaintiff explained at her deposition that she believed "personal relationship" meant "like husband/wife, boyfriend/girlfriend."  At that meeting, Plaintiff told Hagerman that she had been sexually harassed by the site manager's husband and intended to file a police report.  Defendant contends this is the first time Plaintiff reported the harassment to Hagerman.  Hagerman told Plaintiff, "He's not our employee, so figure it out."

After the meeting, Hagerman reviewed Plaintiff's file and found that on her employment application listed the bidder as her first personal reference.  Hagerman suspected Plaintiff had lied to him about not knowing (or not having a "personal relationship" with) the bidder and decided Plaintiff's employment should be terminated.  Hagerman met with Defendant's President, who agreed that Plaintiff's employment should be terminated.  Plaintiff was terminated on May 29, 2012.

In her deposition testimony, Plaintiff stated that she "mentioned" the harassment to Mr. Hagerman prior to the May 23, 2012, meeting with him.  She testified, however, that she did not know the date this initial conversation occurred and that she did not identify the harasser to Hagerman.  Neither Plaintiff's federal court Complaint, her previous sworn interrogatory responses, the Pretrial Order contentions, nor her KHRC administrative complaint indicate that she made a prior

complaint to Hagerman regarding the harassment.  They do not, however, state that Plaintiff failed to make a prior complaint.  Further, in the aforementioned documents, Plaintiff dates her complaint to Hagerman (during the meeting to discuss the bidder) as either May 23, 2012, or May 24, 2012.[1]

Defendant has a general policy that requires all employees to "[r]eport[] to management suspicious, unethical, or illegal conduct by fellow employees, customers, or suppliers."  Plaintiff was aware of this policy.

Plaintiff provided evidence in response to discovery in this case that is inconsistent with the education and employment information Plaintiff provided on her employment application submitted to Defendant.  Under company policies, submitting false information on an employment application is grounds for possible termination.

## Standards for Summary Judgment

The rules applicable to summary judgment are well-established and are only briefly outlined here.  Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

[1] Although the meeting where Plaintiff was asked about the bidder (and complained about the harassment) is variously described as occurring on May 23 or May 24, 2012, these references apparently are to the same event.

matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if sufficient evidence

exists "so that a rational trier of fact could resolve the issue either way" and "[a]n

issue is 'material' if under the substantive law it is essential to the proper

disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th

Cir. 1998).  When presented with a motion for summary judgment, the Court must

decide "whether there is the need for a trial – whether, in other words, there are any

genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202

(1986).  If so, the Court cannot grant summary judgment.  *Prenalta Corp. v. Colo.*

*Interstate Gas Co*., 944 F.2d 677, 684 (10th Cir. 1991).  The Court will not

"evaluate the credibility of witnesses in deciding a motion for summary judgment."

*Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000); *Zia Trust Co. ex rel.*

*Causey v. Montoya*, 597 F.3d 1150, n.2 (10th Cir. 2010).

### Plaintiff's Claim for Sexual Harassment

Sexual harassment in the workplace is unlawful because it is a form of

discrimination with respect to conditions of employment on the basis of sex.  *Hicks*

*v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987).  For sexual harassment

to be actionable it must be sufficiently severe and pervasive "to alter the conditions

of employment and create an abusive working environment." *Meritor Sav. Bank,*
*FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).
Defendant does not argue that the nature of the conduct alleged by Plaintiff fails to
qualify as sufficiently severe and pervasive.  The incidents alleged occurred over
several months and included indecent exposure, indecent propositions and
unwelcome sexual touching.  The conduct described in Plaintiff's testimony, if
found to have occurred by the jury, is sufficiently extreme so as to amount to a
change in the terms and conditions of employment. *See* *Faragher v. City of Boca*
*Raton*, 524 U.S. 775, 788-89, 118 S. Ct. 2275, 2283-84, 141 L.Ed. 2d 662 (1998).

In this case, the claimed harasser was a non-employee.  Thus Defendant is
liable if it condoned or tolerated the condition.  The Courts apply a negligence
standard to such claims.  Defendant is liable if it failed to remedy or prevent a
hostile or offensive work environment created by non-employees of which
management-level employees knew or in the exercise of reasonable care should
have known. *Turnbull v. Topeka State Hosp*., 255 F.3d 1238, 1244 (10th Cir.
2001); *Lockhard v. Pizza Hut, Inc*., 162 F.3d 1062, 1073-74 (10th Cir. 1998); 29
C.F.R. § 1604.11.

Plaintiff testified that she told the site manager of the location where the
alleged harassment occurred that the site manager's husband was sexually

8

harassing her.  This was a report to a management-level employee and gave the employer actual notice of the harassment.  *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 674 (10th Cir. 1998) (holding that informing management-level employees constitutes adequate notice of sexual harassment); 29 C.F.R. § 1604.11(e) (stating that an employer may be responsible for acts of sexual harassment by non-employees against employees in the workplace "where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action")).

The site manager to whom Plaintiff alleges she reported the incidents was in charge of the actual physical location of the alleged harassment. The fact that the offender was the manager's husband no doubt placed her in an awkward position, but does not change the fact that management had actual notice.  In its memorandum Defendant argues that only notice to Plaintiff's supervisor, would have been sufficient to place Defendant on notice.  In this regard Defendant confuses the legal principal relating to who is a "supervisor" for the purpose of liability for supervisor harassment (*see e.g. Vance v. Ball State Univ.*, ___ U.S. ___, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013) (defining "supervisor" for purposes of vicarious liability)) with who is in management for the purpose of actual notice to Defendant (*see Adler*, 144 F.3d at 674; 29 C.F.R. § 1604.11(e)).

9

Defendant also claims that Plaintiff's deposition testimony that she reported the incident to the site manager should be disregarded as inconsistent with her previous statements. Plaintiff's KHRC complaint and previous pleadings in this case, while not including that factual assertion, do not foreclose it. Defendant, and the site manager, deny that she told the site manager of the incidents. This is a question of credibility for the jury. *Seamons v. Snow*, 206 F.3d at 1026; *Zia Trust Co.*, 597 F.3d at n.2.

Defendant also argues that Plaintiff's claim is foreclosed because she failed to comply with a reporting policy. In a case involving co-worker or non-employee harassment, that failure may be relevant to the issue of Defendant's negligence and notice. *See Adler*, 144 F.3d at 674; 29 C.F.R. § 1604.11(d), (e). Defendant's policy requires a report "to management [of] suspicious, unethical, or illegal conduct by fellow employees, customers, or suppliers." The language of Defendant's policy is too general to be considered a policy directed at discriminatory conduct or sexual harassment. Additionally the policy does not literally apply in this instance because the alleged harasser was not a "fellow employee, customer or supplier." Finally, the policy is not specific concerning to whom the report must be made, although the site manager to whom Plaintiff alleges to have complained is, most likely, "management."

10

If the jury believes Plaintiff's version of events, and that Plaintiff told the site manager of the harassment, and that Defendant failed to take sufficient action thereafter, Defendant may be liable for damages caused thereby. As such, the Court **DENIES** summary judgment in regard to this claim.

## Plaintiff's Claim for Retaliatory Discharge

The reporting of unlawful sexual harassment to an employer is legally protected. It is unlawful for an employer to take adverse employment action against an employee for making such a report. 42 U.S.C. § 2000e-3(a). Plaintiff contends that her report of sexual harassment to the employer was the motivation for her discharge. If true, this would create an actionable claim. However, there is insufficient evidence in this case from which a reasonable jury could find retaliation.

It is uncontroverted that the employer was concerned about, and was investigating, suspected misconduct by Plaintiff at the time Plaintiff reported the harassment.[2] It is also uncontroverted that the employer, specifically Mr.

---

[2] Defendant urges the Court to disregard Plaintiff's deposition testimony that she "mentioned" the harassment to her supervisor on a previous occasion as a "sham" inconsistent with previous sworn statements and claims. It is unnecessary to do so. The testimony that she "mentioned" something related to the incidents before May 23, 2012, at an unknown date, without naming the harasser, in which she told Hagerman that she was "being harassed in the office when [the site manager] wasn't there" is insufficient in clarity and specificity to support a motivation for retaliation by the employer. Additionally, her pleadings (see the Pretrial Order, Doc. 17 at page 3) plainly contend that

Hagerman, Plaintiff's supervisor, believed that Plaintiff lied to him about knowing the successful bidder at some foreclosure sales. Defendant's claim that this suspicion was the reason for the decision of Defendant to discharge Plaintiff is essentially uncontroverted.

Plaintiff claims that her complaint to Hagerman about the harassment immediately before her discharge creates a jury question sufficient to survive summary judgment. It does not. To recover damages for retaliation, Plaintiff must prove a link between the injury, in this case her discharge, and the wrong alleged. She must prove that her discharge occurred "because" of her report of harassment. 42 U.S.C. § 2000e-3(a). She must have evidence to prove that "the desire to retaliate was the but-for cause of" her discharge. *University of Texas Southwestern Medical Center v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528, 186 L.Ed.2d 503 (2013). "Employers need not suspend" previously planned employment actions upon learning of protected conduct by the employee. *Clark School Dist. v. Breeden*, 532 U.S. 268, 272, 121 S. Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). The employer "proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*.

---

her later May 24 complaint is the basis for the retaliation. Plaintiff is bound by the contentions in her Pretrial Order. *Bieber v. Associated Collection Servs., Inc.*, 631 F.Supp. 1410, 1414 (D. Kan. 1986).

There is no evidence that the employer's claimed motivation was pretextual. When confronted with the name of the bidder, Plaintiff denied that she had a personal relationship with him even though she listed him as a reference on her job application and admitted, at her deposition, that they were friends.  Defendant's suspicion that Plaintiff lied in response to that inquiry, though disputed, was not unreasonable.  Further, there is no evidence that Defendant is being dishonest in regard to having this suspicion.

The fact that Plaintiff, when confronted with the employer's investigation, complained of sexual harassment does not, in this case, evidence that her complaint, rather than the investigation, was the "but for" cause of her discharge. Plaintiff has no evidence, or even a theory, about why Defendant would react to her report of the conduct of the site manager's husband by discharging her.

Plaintiff contests the correctness of the supervisor's suspicions that she was dishonest in her responses to him or that she was improperly rigging the bidding process. However, the issue here is whether her complaint of discrimination was the cause of her termination.  The honesty of the employer's suspicion (i.e. whether it was a pretext for an unlawful motivation) is relevant here, not its correctness.[3]

---

[3]  Equally irrelevant, and inadmissible, is the decision by the Kansas Department of Labor qualifying Plaintiff for unemployment insurance.  *See **Carpenter v. Southwestern Bell Tele.**,* 12-2483-CM, 2013 WL 6004171, *6 (D. Kan. Nov. 13, 2013).

There is no evidence from which a reasonable jury could find that Plaintiff's harassment complaint, made during an investigation into her own conduct for which her discharge was already contemplated, was a "but for" reason for her discharge.

### After-Acquired Evidence

Defendant requests a ruling that Plaintiff's lost wages damage claim is not valid after the date (November 5, 2013) when Defendant learned of inaccuracies in Plaintiff's resume through discovery.  *See **Miller v. Bircham, Inc***. 874 F. Supp. 337, 339 (D. Kan. 1995).  Plaintiff has not responded to this argument, thus Defendant's motion is granted as uncontested in this regard.  This issue may be moot in light of the Court's ruling on the retaliation claim.

### Conclusion

Defendant's Motion for Summary Judgement (Doc. 18) is **GRANTED** as to the claim of retaliation and Judgment is entered in its favor on that claim. Additionally, the Motion to limit lost wage damages to before November 5, 2013, is **GRANTED**.  The Motion for Summary Judgment as to the claim of sexual harassment is, however, **DENIED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 9th day of July, 2014.

14

 s/ Kenneth G. Gale
Kenneth G. Gale
United States Magistrate Judge